UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN JOSE CASANOVA,

                Plaintiff,

-against-

C.O. MALDONADO; *et al*

                Defendants.

17 CV 1466 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff, Johnathan Casanova ("Plaintiff"), an inmate at Green Haven Correctional Facility, ("Green Haven") filed a *pro se* complaint ("Complaint", ECF No. 2) on February 27, 2017, asserting claims sounding in 42 U.S.C. § 1983 ("Section 1983") against eleven defendants. Presently before the court are Defendants Venettozzi, Valentin, Gleason, Meigs and Isaac's partial motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to plead plausible claim(s). (ECF No. 44 and 63). For the following reasons, the motion is GRANTED in part and DENIED in part.

## BACKGROUND

For purposes of addressing this motion, the factual allegations from Plaintiff's Complaint are taken as true.

Plaintiff is an inmate at Green Haven Correctional Facility. (*See* Complaint at p.4.) On September 16, 2014, Plaintiff was physically and sexually harassed by five correctional officers. (*Id.*) During a facility wide search, Plaintiff was cleaning his cell when Defendant C.O. Valentin unlocked it and five officers entered (none of whom are seeking to dismiss the claims against them



presently.) (*Id*. at ¶142.) The officers beat Plaintiff, groped him and said sexually inappropriate comments to him. (*Id*.)

Following the assault, Plaintiff was questioned by investigators from the Office of Special Investigations, Defendants Charlotte Meigs and Lebaron Isaac. (*Id.* at ¶ 28.) Defendant Isaac asked Plaintiff whether he had any information about illegal activity at Green Haven. (*Id.* at ¶ 30.) Plaintiff responded that he did, saying, "These officers just beat me up and sexually harassed me. Don't you see these bruises on my face and ripped clothes?" (*Id.* at ¶31.) In response, Defendant Isaac laughed, and "sarcastically" said, "I can always send you back there to get beat up again, unless you give me some information about any illegal activity going on in Green Haven we should know about?" (*Id.* at 32.) Plaintiff again said he had no other information for the officers and Defendant Isaac responded, "Well, if you don't tell me what I want to hear, then you're going to the Box even if we gotta make something up." (*Id.* at 33.) After the assault he "complained" to medical staff who "ignored him." (*Id*. at ¶13.)

Subsequent to the questioning by Defendants Isaac and Meigs, the officers allege a weapon was found in Plaintiff's cell. (*Id.* at ¶59.) As a result he was taken to the Special Housing Unit ("SHU"), where he filed two grievances, one of which pertained to the assault. (*Id.* at ¶49.) Plaintiff was subject to a disciplinary hearing where he was sentenced to twelve months in SHU. (*Id*. at ¶139.) Once at SHU, SHU Director Defendant Venettozzi, reduced his SHU sentence from twelve months to six months following his disciplinary hearing. (*Id*.)

As a result of the assault, Plaintiff suffers from constant back pain along his lower spinal column and headaches. (*Id.* at p.5.) Further, he has been suffering from anxiety attacks, Post-Traumatic Stress Disorder ("PTSD"), and reoccurring flashbacks of the assault. (*Id*.) The fear of another assault caused him to have an irregular heartbeat which was treated several times at an

2

outside hospital (*Id.*) Plaintiff was also sent to an outside hospital on an unspecified date after a suicide attempt. (*Id.* at ¶ 123.) Upon return from that hospital visit, he was treated by Dr. Gleason at Green Haven's Mental Health Unit. (*Id.* at ¶139.) Dr. Gleason told Plaintiff she believed he was only there to get his "level changed" in order to get out of his disciplinary hearing. (*Id.* at ¶126.) She released him at the request of the hearing officer, telling the hearing officer, "Yes sir! I'm signing him out now, when are you leaving, I heard this was your last hearing before you retire so give him hell." (*Id.* at ¶131.)

Defendants first filed a partial motion to dismiss against Defendants Gleason, Venettozzi and Valentin ("Green Haven Defs.") asserting that the complaints against defendants should be dismissed because the Plaintiff failed to adequately plead an Eight Amendment medical indifference claim against Dr. Gleason and because Plaintiff's Complaint did not allege Defendants C.O. Valentin and Venettozzi were personally involved in a constitutional violation. (Green Haven Defs. Mot. to Dismiss at pp. 3-9). Defendants also assert that Gleason, Venettozzi and Valentin are all entitled to qualified immunity. (*Id.* at pp. 9-11). Officer's Isaac's and Meigs ("Special Investigations Defs.") then filed a second motion to dismiss asserting that the complains against Defendants Meigs and Isaacs should be dismissed because Plaintiff has failed to adequately plead a constitutional claim against either as neither were personally involved in any of the other constitutional violations, and both are entitled to qualified immunity. (Special Investigations Defs. Mot. to Dismiss at pp. 4-13).

In his opposition to the Defendants' motion to dismiss, Plaintiff contends that due to his documented mental health conditions, the defendants assumed they could use the color of the law to cover up conduct they knew were violating his constitutional rights. (*See* Pl.'s Reply to Defs. Mot. Dismiss at p.3.) Plaintiff adds "based on reliable information and belief, Dr. Gleason, after

3

being briefed by C.O.'s and higher ups, refused to acknowledge Plaintiff's injuries." (*Id*.) "Therefore Dr. Gleason could not have treated the plaintiff with effectual treatment when the Plaintiff returned from his hospital trip." (*Id*. at p.8.)

## LEGAL STANDARDS

### I. Rule 12(b)(6)

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual allegations must "nudge their claim from conceivable to plausible." *Twombly*, 550 U.S. at 555. A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable. *Iqbal*, 556 U.S. at 678. To assess the sufficiency of a complaint, the court is "not required to credit conclusory allegations or legal allegations couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of the complaint…threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 – 79.

*Pro se* complaints are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). They must be held to less stringent standards than complaints written by lawyers, and only dismissed when the plaintiff can prove "no set of facts in support of his claim which would entitle him to relief." *Estelle*, 429 U.S at 106 (quoting *Conley v. Gibson*, 335 U.S. 41, 45-45 (1957)). This "is particularly so when the *pro se* plaintiff alleges that his civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). *Pro se* complaints must be interpreted as raising the strongest claims they suggest, but "must still state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

## II. Section 1983 Actions

§1983 provides that "[e]very person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any citizen of the United States… to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. §1983 "is not itself the source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Paterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under §1983, a plaintiff must allege (1) the challenged conduct was attributable to a person who was acting under color of state law and (2) "the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York,* No. 09 Civ. 5446, 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see Cornejo v. Bell*, 529 F.3d 121, 127 (2d Cir. 2010). Therefore, there are two elements to a §1983 claim: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *See Annis v. Cnty of Westchester*, 136 F.3d 239, 245 (2d. Cir. 1998); *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347,354 (E.D.N.Y. 1999) (noting that §1983 "furnished a cause of action for violation of federal rights created by the Constitution") (citation omitted).

## III. Qualified Immunity

Qualified immunity has been described as an affirmative defense that shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known". *Stephenson v. Doe*, 332 F. 3d 68, 76 (2d Cir. 2003) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  A defendant should raise a qualified immunity defense during pretrial proceedings

so that the issue of qualified immunity can be resolved in the earliest possible stage of litigation. *Id.* In order to determine whether a defendant is entitled to qualified immunity, the court must consider: (1) whether a constitutional right has been violated; (2) whether that right was clearly established at the time; and (3) whether the officer had an objectively unreasonable belief that their conduct was lawful. *Id.*

Courts should first determine the question of whether a constitutional right has been violated. *Pearson v. Callahan,* 555 U.S. 223, 232 (2009). If a constitutional violation has occurred, next it should be decided whether the right was clearly established at the time it was violated. *Id*. In determining if a right is clearly established, it must be: (1) defined with reasonable clarity; (2) the Supreme Court or the Second Circuit must have confirmed the existence of that right; and (3) "a reasonable defendant would have understood that his conduct was unlawful." *Doniger v. Niehoff,* 642 F.3d 334, 345 (2d Cir. 2011).

## DISCUSSION

### I. Claims Against Defendant Venettozzi

To assert a claim against an individual under 42 U.S.C. §1983, a plaintiff must show the defendant's personal involvement in the constitutional violation being alleged. *Grullon v. City of New Haven*, 720 F.3d. 133, 138 (2d Cir. 2013). Vicarious liability is inapplicable to §1983 suits. *Iqbal,* 556 U.S. at 676. Therefore, plaintiff's §1983 claim must show more than a linkage in the chain of command to survive a motion to dismiss. *Ayers v. Coughlin*, 780 F.2d 205 (2d Cir. 1985). The Second Circuit has articulated five possible ways to show personal involvement of a supervisor. *Grullon*, 720 F.3d. at 139. The defendant is personally involved if the defendant: (1) participated directly; (2) after being informed of the violation, did not remedy the wrong; (3) created, or allowed to continue, a policy or custom where unconstitutional violations occurred; (4) was grossly negligent in supervising subordinates who committed the constitutional violation; or

(5) defendant exhibited extreme indifference to the rights of inmates by failing to act on information. *Id.* A direct participant "includes someone who authorizes, orders, or helps others to do unlawful acts, even if he or she does not commit the acts personally." *Terebesi v. Torresso*, 764 F.3d 217 (2d Cir. 2014). A plaintiff must also establish that the supervisor's actions were the proximate cause of the constitutional violation. *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015).

In order to determine whether Venettozzi was personally involved in a constitutional violation, the court must identify a constitutional violation. According to Plaintiff's Complaint, Defendant Venettozzi, in his capacity as SHU director, reduced Plaintiff's sentence from twelve to six months following his appeal of his disciplinary hearing. Although Plaintiff's Complaint is sparse, read liberally, Plaintiff allegations suggest a claim for due process deprivations based on the six month SHU detention. To assert a due process claim, the Plaintiff must establish that: (1) he possessed a liberty interest; and (2) the defendant(s) deprived him of that interest as a result of insufficient process. *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir. 2001).

To show a liberty interest in the context of prison discipline, the deprivation must impose an "atypical and significant hardship…in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 482 (1995). There is no "bright-line rule as to how lengthy a SHU confinement will be considered atypical and significant" but the Second Circuit classifies "segregative sentences of 125-288 days as 'relatively long' and thus necessitating 'specific articulation of…factual findings' before the district court could properly term the confinement atypical or insignificant." *Sims,* 230 F.3d at 23 (quoting *Hynes v. Squillance,* 143 F.3d 653, 658 (2d Cir. 1998)). "The duration of SHU confinement, however, is not the only relevant factor." *Ortiz v. McBride,* 380 F.3d 649, 654 (2004) (finding a ninety day SHU sentence atypical and

7

significant enough to withstand a Rule 12(b)(6) motion when a prisoner was kept in SHU for twenty-four hours a day, was not permitted an hour of daily exercise, and was prevented from showering for weeks at a time).

Plaintiff must allege sufficient facts to support the finding of a liberty interest by showing that his SHU sentence of six months is atypical. In his Complaint, Plaintiff writes simply that "Petitioner also wrote a six page administrative appeal to Venettozzi who only modified petitioners SHU time from 12 months to six months." (*See* Plaintiffs Complaint at ¶ 139.) Six months is approximately 182 days, which falls within the 125-288 period which the Second Circuit considers "relatively long." However, six months alone is not enough to prove a SHU sentence is atypical, and Plaintiff offers no other specific details as to the conditions of his confinement. *Sealy v. Giltner,* 197 F.3d 578, 588 (2d Cir. 1999) (quoting *Beverati v. Smith,* 120 F.3d 500, 504 (4th Cir. 1997)) ("[S]ix months of confinement in especially disgusting conditions that were 'more burdensome than those imposed on the general population' were not 'atypical…in relation to the ordinary incidents of prison life.' "); *Husbands v. McClellan,* 990 F. Supp. 214, 218 (W.D.N.Y 1998) ("[C]onfinement in SHU for six months, standing alone, does not present the type of atypical and significant deprivation in which a state may conceivably create a liberty interest.") Since there was no showing of deprivation of liberty committed by Defendant Venettozzi, Plaintiff has not adequately pled that Defendant Venettozzi was personally involved in a constitutional violation.

### A.  *Qualified Immunity*

Since Plaintiff failed to plead a plausible due process deprivation claim as against Defendant Venettozzi, the court need not address whether he is entitled to qualified immunity.

## II. Claims Against Defendant C.O. Valentin

### A. *Failure to Protect*

Plaintiff has also failed to plead a failure to protect claim against C.O. Valentin. "A prison official may be liable under the Eight Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). "An Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. If a risk to an inmate is "longstanding, pervasive, well documented, or expressly noted by prison officials in the past" and the defendant was exposed to this information, it could be sufficient to find that the defendant had knowledge of that risk. *Id.* Further, a prison official cannot escape liability because they were unaware who specifically would attack who. *Id* at 843. "The question under the Eight Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner" to a substantial risk. *Id.* Finally, a factfinder can conclude a prison official knew of a risk from the fact that the risk was obvious. *Locicero v. O'Connell*, 419 F. Supp. 2d 521, 528 (S.D.N.Y. 2006) (finding a plaintiff's Complaint against prison officials should not be dismissed when an officer known for acting violent and abusive towards inmates hit the plaintiff).

In order to assert a plausible claim, the deprivation must be: (1) sufficiently serious, showing that the inmate is incarcerated under conditions posing a substantial risk to serious harm; and (2) a prison official must have a sufficiently culpable state of mind. *B. Braxton/Obed-Edom v. City of New York*, 368 F. Supp. 3d 729, 737-39 (S.D.N.Y. 2019) (finding plaintiffs complaint against prison officials should not be dismissed when they failed to place plaintiff in protective custody or more suitable housing, despite awareness of her transgender identity and documented

9

history of sexual abuse). A prison official has a culpable state of mind when he or she acts or fails to act while aware of the substantial risk that an inmate will be seriously harmed. *Id.*

Plaintiff has not plead facts giving rise to such a claim. Although Plaintiff attempts to supplement his allegations by indicating Defendant Valentin may have known information before the assault and witnessed it, on the face of the Complaint all that is alleged is that Defendant Valentin opened the door to Plaintiff's cell. There are insufficient allegations to support a finding that she knew what was about to occur. Merely opening a door without any culpable agenda is not unconstitutional conduct. As a result, Plaintiff has not successfully pled a failure to protect claim and said claim against Defendant Valentin must be dismissed.

### B. Failure to Intervene

Plaintiff has, however, successfully pled a failure to intervene claim against C.O. Valentin. Generally, "law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officials in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). Failing to intervene is a constitutional violation when the officers acted with deliberate indifference to a risk of serious harm. *Rosen v. City of New York*, 667 F. Supp. 2d 355, 360 (S.D.N.Y. 2009). A plaintiff prevails on a failure to intervene claim when: (1) the officer had a realistic opportunity to intervene and prevent harm; (2) a reasonable person in an officers position would know that the victims constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene. *Jean-Laurent,* 540 F. Supp. 2d at 512 (finding officers were liable when the plaintiff's pleadings adequately demonstrated the duration of a second strip search was long enough for the defendants to intervene and they did nothing to stop it).

In his Complaint, Plaintiff asserts "for the defendant who opened Plaintiff's cell prior to the use of force, a corrections officer bears an affirmative duty to intercede on behalf of an inmate

when the officer witnesses other officers maliciously beating that inmate in violation of the inmates Eight Amendment rights." Although lacking in specificity, reading Plaintiff's Complaint liberally, one can reasonably infer that C.O. Valentin was present during the physical and sexual assault, otherwise Plaintiff would have no reason to cite a specific duty to intercede. As a result, Plaintiff has plausibly pleaded that C.O. Valentin violated a constitutional right by failing to intervene to protect Plaintiff.

  *C.*   *Qualified Immunity*

  C.O. Valentin is not entitled to qualified immunity. In *Boddie v. Schnieder*, the Supreme Court held that "sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment." *Boddie v. Schnieder*, 105 F.3d. 857, 861 (1997). Although *Boddie* concerned a scenario where there were repeated occurrences of sexual assault that did not give rise to a constitutional violation, the Second Circuit clarified in *Crawford* that, "*Boddie* does not support that narrow interpretation that sexual abuse by a corrections officer may constitute cruel and unusual punishment if it is 'severe and repetitive.'" *Crawford v. Cuomo*, 796 F.3d 252, 257 (2015). "Thus a single incident of sexual abuse, if sufficiently severe or serious, may violate an inmate's Eight Amendment rights, no less than respective abuse conduct." *Id.* Therefore in the context of a sexual assault occurring during a search, "the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Id; see Hudson v. Palmer*, 468 U.S. 517, 530 (1984) ("on holding that respondent does not have a reasonable expectation of privacy enabling him to invoke the protections of the Fourth Amendment does not mean that he is without remedy for calculated harassment unrelated to prison needs."); *Bell v. Wolfish*, 441 U.S. 520 (1979) (noting that sexual "abuse cannot be condoned" as searches must be conducted in a reasonable manner).

Although the Second Circuit did not explicitly confirm the right to be free from such conduct until 2015 in *Crawford,* district courts in the Southern District of New York has recognized such conduct as an Eighth Amendment violation well before the assault against Plaintiff occurred. *See Rodriguez v. D. McClenning*, 399 F. Supp. 2d 228, 239 (S.D.N.Y. 2005) (finding sexual assault by a corrections officer "would constitute an Eight Amendment violation because such behavior violates contemporary standards of decency"); *Webb v. Foreman*, No. 93 CIV. 8579 (JGK), 1996 WL 596515 at *3 (S.D.N.Y. Oct. 17, 1996) (finding sexual harassment that involves physical contact can constitute a cognizable claim under §1983, and therefore allegations that an officer groped an inmate during a pat frisk was enough to survive summary judgement); *Duncan v. Keane,* No. 95 Civ. 1090 (SHS), 1995 WL 649931 at *5 (S.D.N.Y. Nov. 6, 1995) (finding that when an officer "felt all over the plaintiff's rear end" that "even absent binding precedent that physical sexual harassment of prisoners is excessive force and violative of the Eighth Amendment, it should have been apparent, at the time, to a reasonable correction officer that any such conduct would be unlawful"); *Brooks v. Jackson*, No. 11 Civ. 6627 (JMF), 2013 WL 5339151 at *4 (S.D.N.Y Sept. 23, 2013) (finding an officer grabbing an inmates genitals, causing pain and emotional issues, gave rise to an Eight Amendment claim).

Additionally, the right to be free from sexual assault by corrections officers has been long recognized by other circuits. *See Schwenk v. Hartford*, 204 F. 3d 1187, 1197 (9th Cir. 2000) ("the Eighth Amendment right of prisoners to be free from sexual abuse was unquestionably clearly established prior to this alleged assault, and no reasonable prison guard could possibly have believed otherwise"); *Gonzales v. Martinez*, 403 F.3d 1179, 1186 (8th Cir. 2005) ("a plaintiff's uncontroverted claim of deprivations resulting from sexual assault are sufficiently serious to constitute a violation under Eighth Amendment.")(quotations omitted).

Based on the prevailing case law from district courts, as well as common sense, the Court finds sexual assault is an Eighth Amendment violation that was clearly established at the time of the alleged incident. A reasonable officer observing an alleged sexual assault as described by Plaintiff would have known such conduct was legally impermissible and should have intervened. Accordingly, C.O. Valentin is not entitled to qualified immunity.

Similarly, C.O. Valentin is also not entitled to qualified immunity for failing to intervene in the physical assault of Plaintiff. Prisoners have the right to be free from excessive force used by prison officials. *Jean-Laurent,* 540 F. Supp. 2d 501, 513 (S.D.N.Y. 2008). Accepting all facts pled by Plaintiff as true, it appears Valentin had sufficient time to intervene, as the officers, with no provocation by Plaintiff, kicked him, slammed his head against a locker, and choked him, all before putting him in handcuffs. Further, a reasonable officer would know a constitutional right was being violated when a group of officers used such unnecessary force on a prisoner. *Stubbs v. Dudley,* 849 F.3d 83, 86 (2d Cir. 1998) (finding an officer failed to intervene when he did not prevent the beating of a prisoner when he callously refused to permit the prisoner to pass safely though an administrative door so he could escape other inmates pursuing him). Taking the facts in Plaintiff's Complaint as true, and giving Plaintiff every favorable inference, C.O. Valentin passively watched the attack and did nothing to stop it. Therefore, C.O. Valentin is not entitled to qualified immunity.

### III. Claims Against Defendant Dr. Gleason

#### A. *Deliberate Indifference*

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Consequently, the government is obligated to provide adequate medical care to incarcerated people, and the failure to do so is a violation of the Eighth Amendment and gives rise to a deliberate indifference claim under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 103 – 05 (1976). In order to make a claim of medical indifference, a prisoner must show that there

is: (1) an objectively serious medical need; and (2) subjective deliberate indifference, which measures whether the prison official acted with a sufficiently culpable state of mind. *Harrison v. Barkley,* 219 F.3d 132, 136 (2d Cir. 2000). The defendant must have actual notice of the prisoner's serious medical need. *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1986). The subjective standard for deliberate indifference is essentially criminal recklessness. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Therefore if "the defendant's belief that his conduct poses no serious harm need not be sound as long as it is sincere." *Salahuddin v. Goord* 467 F.3d 263, 281 (2d Cir. 2006). Further, the charged official must be aware that there is a substantial risk of harm. *Id.*

There are various limits to a deliberate indifference claim. First, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. 97 at 106. In order for an action or an omission to be a constitutional violation, it must result in a condition of urgency that results in degeneration or extreme pain. *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998); *Koehl,* 85 F.3d at 88 (holding the district court incorrectly dismissed the plaintiffs claim on a 12(b)(6) motion when a prisoner was deprived of his medically needed eye glasses resulting in a significant loss of vision); *Lawarnce v. Couglin*, 862 F. Supp 1090, 1116 (S.D.N.Y 1994) (finding a plaintiff was deprived of medical care when his knee surgery was delayed due to various retaliatory prison transfers, causing pain and suffering). For example, if a prison official deliberately ignores a gash on a prisoners face that is becoming infected, an omission of treatment could violate the Eight Amendment, where the failure to provide cosmetic surgery when a prisoner nicks himself shaving would not. *Chance,* 143 F.3d at 702.

It is likely that at least some of the Plaintiff's articulated medical needs could be considered sufficiently serious. Plaintiff alleges that among injuries suffered as a result of the assault, he has Post-Traumatic Stress Disorder ("PTSD"), and reoccurring flashbacks of the assault among other

injuries. PTSD is sufficiently serious. *Case v. Anderson,* No. 16 Civ. 983 (NSR), 2017 WL 3701863, at * 9 (SD.N.Y, Aug. 25, 2017) (finding even mental disorders that do not exhibit suicidal ideations qualify as sufficiently serious); *Guarneri v. Hazzard,* No. 9:06-CV-0985, 2008 WL 552872 at *6 (N.D.N.Y Fed. 27, 2008) (finding plaintiffs, PTSD, bipolar disorder and depression are a serious medical needs).

Dr. Gleason treated Plaintiff after he was sent to an outside hospital for physical injuries sustained during a suicide attempt. Taking into consideration the allegations in Plaintiff's Complaint, it is unclear how Dr. Gleason's treatment or lack of treatment caused Plaintiff's injuries. Plaintiff's mere assertion that Dr. Gleason knowingly denied him medical treatment, does not contain enough factual specifics to give rise to a claim of medical indifference. His pleadings amount to no more than a conclusory statement which is insufficient under the *Iqbal* pleading standards. *Iqbal*, 556 U.S. at 678 (pleadings do not require "detailed factual allegations" but demand more than an unadorned, the defendant-unlawfully-harmed-me accusation").

Plaintiff alleges that upon his return from the outside hospital following his suicide attempt, he was taken to the mental health unit at Green Haven where he was treated by Dr. Gleason. Plaintiff, however, provides no facts describing the nature of the treatment or what injuries Dr. Gleason was aware of, if any. For example, it is unclear if Dr. Gleason knew of Plaintiff's PTSD. Plaintiff does not allege whether he made complaints to Dr. Gleason, whether Dr. Gleason was provided with records, nor any details about the treatment or lack thereof. All that is suggested from the pleadings is that Dr. Gleason believed Plaintiff was only at the Mental Health Unit to get out of his disciplinary hearing and told a hearing officer to "give him hell" at that disciplinary hearing. Although, if true, such statement would be deemed very unprofessional, this behavior does not, by itself, show Dr. Gleason had notice of a serious medical need, was subjectively

indifferent to Plaintiff's medical needs, and acted with the requisite culpable mental state. Though Plaintiff also asserts that Dr. Gleason did not give him effective treatment, ineffective treatment, does not rise to the level of a constitutional violation. *Estelle v. Gamble,* 429 U.S. 97,106 (1976) (finding that a complaint that a doctor has been negligent treating a medical condition does not state a valid claim of medical mistreatment under the Eight Amendment.) Therefore, the factual allegations are insufficient to give rise to the presumption that Dr. Gleason was deliberately indifferent to Plaintiff's medical needs.

The only treatment Plaintiff references indicates Green Haven has been responding to Plaintiff's medical needs. He was sent to an outside hospital for both the suicide attempt and several times for an irregular heartbeat. Even under the liberalized standard of review for *pro se* plaintiffs, without more factual details about what medical needs were articulated to Dr. Gleason, and what treatment was or was not provided, there are not enough facts to show a serious medical need which Dr. Gleason had notice of and unreasonably disregarded. Accordingly, the Defendants' motion seeking to dismiss the claims against Dr. Gleason must be granted.

### B. *Qualified Immunity*

Since Plaintiff has not adequately plead a constitutional violation by Dr. Gleason, the court need not decide whether Dr. Gleason is entitled qualified immunity.

### IV. **Claims against Defendant Isaac**

A. *Verbal Assault and False Misbehavior Report*

Read liberally, Plaintiff's Complaint suggests Defendant Isaac violated his Eighth Amendment Rights by verbally harassing and threatening him. However, allegations of verbal harassment, without stating any injury or damage, do not state a plausible claim under §1983. *Harris v. Keane*, 962 F. Supp. 397, 406 (S.D.N.Y. 1997); *see also Lopez v. Cipollini*, 136 F. Supp. 3d 570,589 (S.D.N.Y. 2015) (quoting *Hare v. Hayden,* No. 09 Civ. 3135(RWS), 2011 WL

1453789, at *7 (S.D.N.Y. Apr. 14, 2011)) ("[V]erbal harassment or profanity alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. §1983"). Further, the filing of false disciplinary reports is not a constitutional violation, as long as the plaintiff was provided with all the due process rights to which he was entitled. *Freeman v. Rideout*, 808 F.2d 949, 950 (2d Cir. 1986). In other words, to state a claim based on a false misbehavior report, the plaintiff must allege the subsequent hearing was unfair in order for it to violate a prisoner's due process rights. *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997).

Taking Plaintiff's Complaint as true, Defendant Isaac threatened to file a false misbehavior report in attempt to extract information from Plaintiff. Since verbal harassment and the filing of a false misbehavior report are not constitutional violations, Plaintiff must show Defendant Isaac's conduct led to actual injury such as the violation of Plaintiff's due process rights.

Further, Plaintiff must show Defendant Isaac was personally involved in that constitutional violation by showing Isaac was a direct participant. A direct participant in a constitutional violation "includes someone who authorizes, orders or helps others to do unlawful acts, even if he or she does not commit the acts personally." *Terebesi v. Torresso*, 764 F.3d 217 (2d Cir. 2014). A plaintiff must also establish that the supervisor's actions were the proximate cause of the constitutional violation. *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015).

A misbehavior report was filed against Plaintiff subsequent to him being questioned by Defendant Isaac. However, Plaintiff did not provide sufficient facts showing the misbehavior report was connected to Isaac's threat. Further, Plaintiff's Complaint does not show Defendant Isaac caused Plaintiff any injury. Taking Plaintiff's Complaint as true, the misbehavior report

17

resulted from a search of Plaintiff's cell which uncovered a sharp piece of metal that prison officials classified as a weapon. (Compl. at ¶ 59). The entire facility was being searched that day, and there are no allegations in the complaint that Isaac specifically instructed officers to search Plaintiff's cell. (*Id.* at ¶ 2.) Plaintiff disputes whether the broken piece of metal was purposefully sharpened, however, he does not dispute the piece of metal existed and was found in his cell. He does not allege there were any other grounds for the subsequent misbehavior report. As a result, Plaintiff has not adequately shown Defendant Isaac's threat of a misbehavior report caused him any injury, as the disciplinary hearing seemed to be completely unrelated to Defendant's Isaac's threat.

Although Plaintiff additionally claims his due process rights were violated during the disciplinary hearing, he does not allege this due process violation was in any way related to Isaac's threat. Rather, Plaintiff's alleges the officer in charge of his hearing did not allow the testimony of certain important witnesses. (*Id.* at ¶57.) Plaintiff does not allege any connection between the threat of a false misbehavior report and the content of the disciplinary hearing. Plaintiff fails to assert how Defendant Isaac's threat caused him injury. As a result, Plaintiff has not pled sufficient facts showing Defendant Isaac violated a constitutional right, was personally involved in the subsequent due process violation, or was the proximate cause of the subsequent constitutional violation. Thus, the claims against Defendant Isaac must be dismissed.

B. *Qualified Immunity*

Since Plaintiff has not sufficiently pled Defendant Isaac violated a constitutional right, the court need not decide whether Defendant Isaac is entitled qualified immunity.

V. **Claims Against Defendant Meigs**

Plaintiff has not alleged sufficient facts to support a claim that Defendant Meigs violated a constitutional right. Plaintiff only mentions Officer Meigs once in his Complaint, by asserting

"inside of this room sat two I.G. personnel who identified themselves as the investigators from Albany (Black male John Doe and White Female Jane Doe)" with John Doe referring to Officer Isaac and Jane Doe referring to Officer Meigs. (Complaint at ¶ 28). Even reading Plaintiff's Complaint under liberalized *pro se* standards, all Plaintiff is alleging is that Defendant Meigs was sitting in the room when Defendant Isaac threatened Plaintiff, conduct that does not rise to the level of a constitutional violation and for which Plaintiff has not causally linked to a harm. *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (noting a plaintiff must also establish defendant's actions were the proximate cause of a constitutional violation.) Notably, other than being present, Plaintiff does not attribute any other conduct to Meigs. As a result, Plaintiff has not adequately pled Officer Meigs was involved in any constitutional violations and the claims against Defendant Meigs must be dismissed.

    A.    *Qualified Immunity*.

Since Plaintiff has not sufficiently pled Defendant Meigs violated a constitutional right, the court need not decide whether Dr. Gleason is entitled qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. The motion to dismiss is granted to the extent of dismissing, without prejudice, the claim for failure to protect as against C.O. Valentin, the claim for medical indifference as against Dr. Gleason, the claim for alleged due process violations as against Defendant Venettozzi and the claims for verbal harassment and the filing of misbehavior reports as against Defendants Isaac and Meigs. The motion to dismiss is denied in all other respects. Plaintiff shall have 45 days from the date of this Order to amend the complaint as to those claims that are dismissed without prejudice. If Plaintiff elects to file an amended complaint, Defendants shall have until 30 days

from the date of the Plaintiff's filing to file responsive pleadings or seek leave to move. If Plaintiff does not timely file an amended complaint, all claims dismissed pursuant to this Opinion will be dismissed with prejudice and the remaining Defendants shall have 60 days to file responsive pleadings. The Clerk of the Court is respectfully requested to mail a copy of this opinion to *pro se* plaintiff, show proof of service on the docket and terminate the motions on the docket at ECF No. 44 and 63.

Dated: July 22, 2019
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge