UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN JOSE CASANOVA,

                                    Plaintiff,

                    -against-

CORRECTION OFFICER MALDONADO, et
al.,

                                    Defendants.

**MEMORANDUM OPINION
AND ORDER**

17-CV-01466 (PMH)

PHILIP M. HALPERN, United States District Judge:

Jonathan Jose Casanova ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against employees of the New York State Department of Corrections and Community Supervision ("DOCCS") in connection with his incarceration at Green Haven Correctional Facility ("Green Haven"). (Doc. 2, "Compl.").[1]

Plaintiff initiated this action with a Complaint docketed on February 27, 2017. (*Id.*). Following two separate Orders issued by Judge Nelson S. Román—before whom this matter proceeded prior to its transfer to this Court on April 13, 2020—this action, at its outset, proceeded against nine individuals: (1) A. Dir. of Special Housing Unit Venettozzi ("Venettozzi"); (2) Inspector General Investigator Lebron Isaac ("Isaac"); (3) Inspector General Investigator Charlotte Meigs ("Meigs"); (4) Dr. Colleen Gleason[2] ("Dr. Gleason"); (5) Hearing Officer A.D.S.P. O'Neill ("O'Neill"); (6) RN W. Miller ("Miller"); (7) Correction Officer Valentin ("Valentin"); (8) Correction Officer Maldonado ("Maldonado"); and (9) Correction Officer Flack ("Flack," and collectively, "Defendants"). (*See id.* at 1; Doc. 18; Doc. 50).

---

[1] Citations to Plaintiff's filings correspond to the pagination generated by ECF.

[2] At the time of the underlying events, Dr. Gleason was known as Colleen Kiernan. (Doc. 25; Doc. 26).

In a July 22, 2019 Opinion & Order, Judge Román dismissed all claims against Venettozzi, Dr. Gleason, Isaac, and Meigs, as well as the failure to protect claim against Valentin, without prejudice. (Doc. 68).[3] Judge Román did not, however, dismiss the failure to intervene claim against Valentin. (*Id*. at 10-13). Notwithstanding his conclusions, Judge Román gave Plaintiff forty-five days to amend the Complaint and cure the dismissed claims. (*Id*. at 19). Judge Román warned, however, that "[i]f Plaintiff does not timely file an amended complaint, all claims dismissed pursuant to this Opinion will be dismissed with prejudice and the remaining Defendants shall have 60 days to file responsive pleadings." (*Id*. at 20). Plaintiff did not file an amended pleading and, on December 18, 2019, Judge Román issued an Order directing that all claims dismissed in his Opinion & Order be "dismissed with prejudice." (Doc. 70 at 1).

On September 28, 2020, Magistrate Judge Judith C. McCarthy—to whom Judge Román referred all general pretrial matters—confirmed that discovery was complete and terminated the referral. (Doc. 80; *see also* Doc. 33). On November 4, 2020, the Court held a telephonic case management conference and extended Defendants' time to December 2, 2020 to serve and file a letter (along with their 56.1 Statement of Facts) requesting a pre-motion conference in connection with their contemplated motion for summary judgment. (Doc. 84). Defendants filed their letter and, receiving no opposition, the Court waived its pre-motion conference requirement and set a briefing schedule for Defendants' motion. (Doc. 86). Under that schedule: (1) Defendants were to serve and file their moving papers on January 29, 2021; (2) Plaintiff was to serve and file his opposition by March 1, 2021; and (3) Defendants' reply papers were to be served and filed by March 8, 2021. (*Id*.).

---

[3] A copy of this decision is available on commercial databases. *See Casanova v. Maldonado*, No. 17-CV-01466, 2019 WL 3286177 (S.D.N.Y. July 22, 2019). Miller, O'Neill, Maldonado, and Flack filed their Answer on May 22, 2018; Valentin filed her Answer on September 20, 2019. (Doc. 30; Doc. 69).

Defendants filed their motion—seeking summary judgment on behalf of Valentin, Miller, and O'Neill, only—in accordance with the briefing schedule on January 29, 2021. (Doc. 87; Doc. 92, "Def. Br."). On March 9, 2021, the Court received from Plaintiff filings stylized as a motion for default judgment and a brief in support thereof. (Doc. 93; Doc. 93-1). Plaintiff represented in those filings his position that the Court advised him during the November 4, 2020 conference call that "he did not have to [a]nswer the Defendants['] motion for summarry [sic] judgment in these civil proceedings . . . ." (Doc. 93 at 1). The following day, the Court issued an Order denying Plaintiff's motion for default and explaining that:

> the Court <u>did not</u> advise Plaintiff that he 'did not have to' respond to Defendants' motion for summary judgment; rather the Court noted during the conference that because Plaintiff is proceeding *pro se*, it would not require him to respond to Defendants' 56.1 Statement. Should Plaintiff oppose the relief Defendants seek, he is encouraged to file a response.

(Doc. 95 at 1 (emphasis in original)). "In light of Plaintiff's confusion as to whether he should serve and file an opposition to Defendants' motion for summary judgment," the Court extended Plaintiff's time to serve and file his opposition to April 9, 2021. (*Id*. at 2). The Court warned, however, that "[s]hould Plaintiff fail to serve and file an opposition to Defendants' motion for summary judgment, the Court will construe . . . the motion for default and its accompanying memorandum of law as Plaintiff's opposition." (*Id*. (internal citations omitted)).

Following further correspondence from Plaintiff, on April 28, 2021, the Court *sua sponte* extended the briefing time further, and directed that: (1) opposition be served and filed by June 4, 2021; and (2) reply papers, if any, be served and filed by June 18, 2021. (Doc. 103). The Court once again warned Plaintiff that failing to serve and file an opposition brief by that date would mean that the motion for default and its accompanying memorandum of law would be construed as his opposition. (*Id*.). The Court also ordered a transcript of the November 4, 2020 conference—

at no cost to Plaintiff—and directed that a copy be mailed to him to remove any doubt about the Court's instructions. (*Id.*; Doc. 104; *see also* Apr. 30, 2021 Entry). As of the date of this Memorandum Opinion and Order, no party has filed anything since April 2021. (*See* Doc. 102). The Court therefore construes the motion for default and its accompanying memorandum of law as Plaintiff's opposition to the pending motion for summary judgment and, because Defendants have not requested an extension of time to file a reply brief, deems the motion fully submitted.

For the reasons set forth below, the motion is GRANTED.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion and draws them from: (1) the Complaint; (2) Defendants' Rule 56.1 Statement (Doc. 89, "Def. 56.1 Stmt."); (3) Plaintiff's motion for default and memorandum of law in support thereof (Doc. 93; Doc. 93-1);[4] (4) the Declaration of Jennifer Gashi along with the exhibits annexed thereto (Doc. 90, "Gashi Decl."), which include, *inter alia*: (i) Plaintiff's May 13, 2019 deposition transcript (Doc. 90-2, "Gashi Decl. Ex. B"); (ii) the transcript of Plaintiff's disciplinary proceedings (Doc. 90-3, "Gashi Decl. Ex. C"); and (iii) the disciplinary hearing record and disposition sheet generated at the conclusion of the disciplinary hearing. (Doc. 90-4, "Gashi Decl. Ex. D"); and (5) the Declaration of W. Miller and the exhibits annexed thereto (Doc. 91, "Miller Decl."), specifically: (i) the September 22, 2014 Inmate Injury Report (Doc. 91-1, "Miller Decl. Ex. A"); and (ii) an excerpt of Plaintiff's medical chart (Doc. 91-2, "Miller Decl. Ex. B").

---

[4] Plaintiff did not submit his own Rule 56.1 Statement or respond to Defendants' 56.1 Statement. "While *pro se* litigants are . . . not excused from meeting the requirements of Local Rule 56.1 . . . where a *pro se* plaintiff fails to submit a proper Rule 56.1 Statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Wiggins v. Griffin*, No. 18-CV-07559, 2021 WL 706720, at *1 n.1 (S.D.N.Y. Feb. 22, 2021) (internal quotation marks omitted). As Plaintiff relied upon the Court's representation that he need not oppose the 56.1 Statement, the Court will, in its discretion, consider the motion for default judgment and its associated brief as opposition to Defendants' Rule 56.1 Statement.

I.   Valentin's Participation

Plaintiff was incarcerated at Green Haven during a facility-wide lockdown on September 16, 2014. (Def. 56.1 Stmt. ¶¶ 5-6; Compl. at 8). As part of the lockdown, DOCCS employees "conducted an unscheduled search of the entire prison," including inmates' cells. (*See* Compl. at 8; *see also* Gashi Decl. Ex. B at 33). During this process, Plaintiff could hear officers conducting their searches. Specifically, Plaintiff testified that he heard officers giving orders and that:

> each officer would stand in front of the cell that they [were] about to search and give a direct order to the officer in the bubble [*i.e.*, the centralized location for unlocking cells] for them to open the cell prior to them going into the search.
>
> Well, actually they would stand in front of the inmate's cell and I could hear, as well as the rest of the inmates hear them give the inmates inside of the cells orders . . . .

(Gashi Decl. Ex. B at 26). He testified further that, in his cell, it "sound[ed] like they were destroying people's cells . . . ." (*Id*. at 27).

When the time came for his cell to be searched, Plaintiff claims that officers "just literally opened my cell out of nowhere and rushed me." (Gashi Decl. Ex. B at 30; *see also id*. at 123 (claiming that "my cell mysteriously opened up")). Plaintiff asserts that when those officers—a group including Maldonado and Flack—entered Plaintiff's cell, they physically and sexually abused him. (Compl. at 4, 11-12; Gashi Decl. Ex. B at 37-46; Gashi Decl. Ex. C at 18-19). Plaintiff was removed from his cell, taken from the cellblock, and eventually escorted to the Special Housing Unit ("SHU"). (*Id*. at 12-15; Gashi Decl. Ex. B at 46-47).

Notwithstanding the fact that Plaintiff does not know who opened his cell from the bubble—and, notably, his testimony suggests that he did not hear officers direct anybody in the bubble to open his cell—he maintains that it "had to have been" Valentin because Plaintiff passed her near the bubble while en route to the SHU. (*See* Gashi Decl. Ex. B at 30-31; *see also id*. at

123-26, 131-32). Plaintiff testified at his disciplinary hearing that as he passed Valentin, he heard

her "laughing and congratulating . . . Flack for beating [him] up." (Gashi Decl. Ex. C at 20-21).

II.    Miller's Participation

Plaintiff presented to Miller for medical attention once: September 22, 2014.[5] (Def. 56.1

Stmt. ¶¶ 15-16, 25; Gashi Decl. Ex. B at 92; Miller Decl. Ex. A; Miller Decl. Ex. B at 3; *see also*

Miller Decl. ¶¶ 6, 13). On that date, both Plaintiff and Miller filled out an Inmate Injury Report.

(Def. 56.1 Stmt. ¶ 20; Miller Decl. Ex. A; *see also* Miller Decl. ¶ 10 (explaining that the document

was completed by Plaintiff and Miller)). Under the heading "Inmate Statement," above Plaintiff's

signature, it reads:

> 3 officers ran in my cell pushed me into a wall handcuffed me and
> striped [sic] my clothes off and grabbed my private parts. Wrist have
> cuts & bruises.

(Miller Decl. Ex. A). Under the section labeled "Facility Health Service Report," indicating that

the injury was reported at 4:30 p.m. on September 22, 2014, Miller noted:

> No injury observed denies anything inserted per rectum. Ø injury
> about hands/wrist. Ø cuts or ecchymosis obs.

(*Id*.).

The progress notes bear out the same results for the September 22, 2014 interaction:

> PT brought to clinic by security. PT c/o he was sexually assaulted
> during frisk on 9/16/14. PT denies being penetrated orally or per
> rectum. States his scrotum was touched during body search. PT has
> Ø injuries . . . Ø ecchymosis, redness, nor swelling.

---

[5] Plaintiff testified that Miller saw him on September 17, 2014, not September 22, 2014. (*See* Gashi Decl. Ex. B at 92). The Court need not accept Plaintiff's unsupported recollection, contradicted by the record, at this juncture. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonably jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

(Miller Decl. Ex. B at 3). Observing no injuries, Miller concluded that further treatment was unnecessary, but indicated Plaintiff could "follow up with his primary medical provider if he felt that was necessary." (Miller Decl. ¶ 12; *see also* Miller Decl. Ex. A; Miller Decl. Ex. B at 3).

III.    O'Neill's Participation

After the search of Plaintiff's cell, he received two misbehavior reports: (1) one written by Flack for possessing gang-related material; and (2) one written by Maldonado for possessing a weapon. (Def. 56.1 Stmt. ¶¶ 13-14). These reports were the subject of a disciplinary hearing held on six days between September 22, 2014 and November 24, 2014, and over which O'Neill presided as the hearing officer. (*Id*. ¶ 27; *see generally* Gashi Decl. Ex. C). Plaintiff never interacted with O'Neill before the hearing. (Def. 56.1 Stmt. ¶ 35; Gashi Decl. Ex. B at 72).

Plaintiff, in preparing for his hearing, was advised of his right to choose an "assistant" to help him prepare for the hearing, invoked that right, and was assigned an assistant of his choice. (Def. 56.1 Stmt. ¶¶ 29-30; *see also* Gashi Decl. Ex. B at 68; Gashi Decl. Ex. C at 3). Plaintiff met with this individual, who helped gather evidence and secure witnesses, before and during the hearing. (Def. 56.1 Stmt. ¶¶ 31-32; *see also* Gashi Decl. Ex. B at 68; Gashi Decl. Ex. C at 3, 8-9, 21). Plaintiff was given complete copies of every document he requested, with the exception of the facility-wide Unusual Incident Report—of which he received copies of only the portions pertaining to him and the search of his cell. (Def. 56.1 Stmt. ¶¶ 33-34; *see also* Gashi Decl. Ex. B at 70-71; Gashi Decl. Ex. C at 40-41). Plaintiff was informed of the charges against him and received copies of the underlying misbehavior reports before the hearing began. (Def. 56.1 Stmt. ¶ 28; Gashi Decl. Ex. B at 67; Gashi Decl. Ex. C at 3).

Once the hearing began, O'Neill adjourned the proceeding five times in order to develop the record and, *inter alia*, give Plaintiff an opportunity to review documents and secure witnesses.

7

(Def. 56.1 Stmt. ¶ 37; *see also* Gashi Decl. Ex. B at 72-73; Gashi Decl. Ex. C at 8, 20, 42, 70, 83).

Plaintiff testified on his own behalf at the hearing, called five inmate witnesses, questioned four

DOCCS employees (including Maldonado and Flack), and objected on the record. (Def. 56.1 Stmt.

¶¶ 38-41; *see also* Gashi Decl. Ex. B at 72-77; *see generally* Gashi Decl. Ex. C). At the end of the

hearing, on November 24, 2014, O'Neill found Plaintiff guilty of all charges, read his disposition

into the record, and issued a written disposition that included a statement of evidence relied upon

in reaching his conclusion. (Def. 56.1 Stmt. ¶ 42; *see also* Gashi Decl. Ex. B at 78; Gashi Decl.

Ex. C at 88-89; Gashi Decl. Ex. D). O'Neill imposed a sentence of "twelve months' in SHU time,

twelve months' loss of package, twelve months' loss of commissary, [twelve] months' loss of

phone, all . . . [to] begin on the start date of 9/16/14 with release date of 9/16/15." (Gashi Decl.

Ex. C at 88).

On appeal, Venettozzi reduced the sentence O'Neill imposed from one year to six months.

(Gashi Decl. Ex. B at 89, 138). This litigation followed.

## **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the

outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F.

Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot

preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1

(S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when

determining whether summary judgment is appropriate, "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial . . . ." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts . . . ." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must establish also its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805

9

F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (explaining that summary judgment is appropriate when "the law so favors the moving party that entry of judgment in favor of the movant . . . is proper").

The Court is, of course, mindful that "[*p*]*ro se* litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-07186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018) (internal quotation marks omitted). "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff." *Adams v. George*, No. 18-CV-02630, 2020 WL 5504472, at *5 (S.D.N.Y. Sept. 8, 2020). This status does not, however, excuse a *pro se* litigant from making the showing required to defeat summary judgment; he or she must offer more than "bald assertions, completely unsupported by evidence" to overcome the motion. *Wisdom v. Loiodice*, No. 17-CV-04837, 2020 WL 4431590, at *4 (S.D.N.Y. July 31, 2020); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (explaining that the mere fact that a litigant is *pro se* "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment" (internal quotation marks omitted)); *Ross v. Koenigsmann*, No. 14-CV-01321, 2017 WL 9511096, at *1 (N.D.N.Y. Aug. 16, 2017), *adopted sub nom. Ross v. Mannava*, 2017 WL 4338883 (N.D.N.Y. Sept. 29, 2017).

## ANALYSIS

Plaintiff's claims against Valentin, Miller, and O'Neill are alleged under 42 U.S.C. § 1983. That statute provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). Plaintiff alleges here that Valentin, Miller, and O'Neill violated his Eighth and Fourteenth Amendment rights, but the movants insist that summary judgment is proper as to every claim against them because there is no genuine issue of material fact; and, quite simply, Plaintiff has no viable claims against them. The Court addresses these arguments *seriatim*.

I.    Eighth Amendment Failure to Intervene Claim Against Valentin

Plaintiff's remaining claim against Valentin is that she failed to prevent the use of excessive force on September 16, 2014. (*See* Doc. 68; Doc. 70). The Eighth Amendment[6] instructs that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. This language requires prison officials to "take reasonable measures to guarantee the safety of inmates in their custody." *Ross v. Corr. Offs. John & Janes Does 1-5*, 610 F. App'x 75, 76-77 (2d Cir. 2015) (quoting *Hayes v. New York City Dep't*

---

[6] Plaintiff's claim is governed by the Eighth Amendment because he is a convicted prisoner. Plaintiff provided his Department Identification Number or "DIN" in his pleading. (Compl. at 1). Searching Plaintiff's DIN (07-A-6541) on the DOCCS inmate lookup website, Plaintiff was convicted of, *inter alia*, Attempted Murder in the Second Degree, received by DOCCS in December 2007, and is presently incarcerated serving a term with an aggregate maximum sentence of twenty years. *Gunn v. Annucci*, No. 20-CV-02004, 2021 WL 1699949, at *8 n.4 (S.D.N.Y. Apr. 29, 2021) ("The Court may take judicial notice of Plaintiff's DOCCS inmate lookup information." (internal quotation marks omitted)).

*of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)). This duty means, among other things, that "prison officials[] can be held liable under § 1983 for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence." *Edwards v. Daniels*, No. 17-CV-05018, 2020 WL 3057412, at *2 (S.D.N.Y. June 9, 2020) (alteration in original, internal quotation marks omitted). Specifically:

> [f]ailure to intercede results in liability where an officer observes excessive force is being used or has reason to know that it will be. However, in order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring.

*Vann v. Sudranski*, No. 16-CV-07367, 2020 WL 3001072, at *6 (S.D.N.Y. June 4, 2020) (internal citations and quotation marks omitted); *see also Samuels v. Prack*, No. 13-CV-08287, 2017 WL 934706, at *9 (S.D.N.Y. Mar. 8, 2017).

Even if the Court assumes that Valentin was the individual who opened Plaintiff's cell door from the bubble—a fact that Plaintiff has not established, in any event—the claim against Valentin must be dismissed. There is absolutely no factual predicate upon which to conclude that, before officers entered Plaintiff's cell, Valentin knew or had reason to know about the impending use of excessive force. As for what transpired in the cell, there is no evidence supporting the position that Valentin knew or had reason to know that officers were using excessive force. In fact, Plaintiff testified during his disciplinary hearing that "nobody could witness [the officers] attacking" him. (Gashi Decl. Ex. C at 18). At most, the record suggests that people outside the cell could hear yelling, but it does not suggest that those yells would have put anybody on notice about an unconstitutional use of force. (*See* Gashi Decl. Ex. B at 37-42; Gashi Decl. Ex. C at 18-19, 32). Given the complete failure of proof, amounting to a complete absence thereof much less suggesting that Valentin knew or should have known that excessive force was being used, the claim against her for failing to intervene in the use of that force must be dismissed. *See, e.g., Vann*, 2020 WL

3001072, at *6 (concluding that the record did "not support any claim that [the defendant] witnessed the unlawful conduct, encouraged or acquiesced in such conduct, or had a realistic opportunity to prevent the alleged use of excessive force from occurring"); *Cox v. Fischer*, 248 F. Supp. 3d 471, 484 (S.D.N.Y. 2017) (granting summary judgment where there was "no evidence that [the defendant] directed other officers to use force against [the plaintiff], or that she failed to intervene once the physical struggle began").

As such, Valentin's motion for summary judgment is granted and the claim for relief against her is dismissed with prejudice.

II.  Eighth Amendment Deliberate Indifference Claim Against Miller

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (alteration in original)). "A plaintiff can prevail on a deliberate indifference to medical needs claim under the Eighth Amendment by satisfying a two-prong test." *Sutton v. Rodriguez*, No. 18-CV-01042, 2020 WL 5504312, at *4 (S.D.N.Y. Sept. 8, 2020).

> The first prong is objective and requires that the alleged deprivation in medical care be sufficiently serious. A deprivation in medical care is sufficiently serious if (1) the prisoner was actually deprived of adequate medical care and (2) the inadequacy in medical care is sufficiently serious. The latter inquiry contemplates a condition of urgency that may result in degeneration or extreme pain.
>
> . . . .
>
> The second prong of the deliberate indifference test under the Eighth Amendment is subjective and requires that the plaintiff demonstrate that the defendant had a sufficiently culpable state of mind. A defendant had a sufficiently culpable state of mind if he acted or failed to act while actually aware of a substantial risk that serious inmate harm will result.

*Id*. at *4-5 (internal citations and quotation marks omitted).

"[A] prisoner is not entitled to the best healthcare possible or even to a choice among available treatment modalities." *Robinson v. Wolf-Friedman*, No. 18-CV-02409, 2019 WL 4640236, at *6 (S.D.N.Y. Sept. 24, 2019) (internal quotation marks omitted). "Indeed, prison officials and medical officers have wide discretion in treating prisoners, and Section 1983 is not designed to permit federal courts to interfere in the ordinary medical practices of state prisons." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). "If a prisoner's course of treatment is one about which reasonable doctors could disagree, an Eighth Amendment claim will not ordinarily lie." *Dichiara v. Pataki*, No. 06-CV-06123, 2007 WL 749742, at *3 (E.D.N.Y. Mar. 7, 2007); *see also Sonds*, 151 F. Supp. 2d at 311 ("A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference."). Here, the facts militate against Plaintiff at both stages.

First, Plaintiff testified that his injuries consisted of bumps on his head, back pain, a headache, and superficial scratches. (Gashi Decl. Ex. B at 47-48). These injuries, as a matter of law, are not—without more—of a vintage that "might have produced death, degeneration, or extreme pain." *Vasquez v. Cty. of Rockland*, No. 13-CV-05632, 2020 WL 883514, at *13 (S.D.N.Y. Feb. 24, 2020) (internal quotation marks omitted); *see, e.g.*, *Brown v. Annucci*, No, 19-CV-09048, 2021 WL 860189, at *5 (S.D.N.Y. Mar. 8, 2021) ("District courts in the Second Circuit have consistently held that bruises, lacerations, cuts, black eyes, and other superficial injuries are not sufficiently serious to support a deliberate indifference claim." (quoting *Morehouse v. Vasquez*, No. 17-CV-04836, 2020 WL 1049943, at *18 (S.D.N.Y. May 4, 2020)); *Sledge v. Bernstein*, No. 11-CV-07450, 2012 WL 4761582, at *5 (S.D.N.Y. Aug. 2, 2012) ("[C]ourts in this district have held that terrible and extreme headaches and swelling do not satisfy the objective component of

an Eighth Amendment claim."); *see also Adams v. Annucci*, No. 17-CV-03794, 2020 WL 1489787, at *12 (S.D.N.Y. Mar. 27, 2020) (dismissing claim for deliberate indifference to a serious medical need because "although Plaintiff alleges that he has suffered from headaches, backaches, stomach pains, sleeplessness, stress, and anxiety, such ailments, without more, fail to satisfy the objective requirement" (internal citations omitted)). However, even if the injuries Plaintiff identified were sufficiently serious, there is no basis to conclude that the care Miller provided was inadequate. Fundamentally, Plaintiff's point is that Miller should have treated him differently—but disagreement over treatment cannot be the basis for a claim under the Eight Amendment. *See Chance*, 143 F.3d at 703 ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

Second, even if Plaintiff had established that he suffered a sufficiently serious deprivation of medical care in Miller's charge, there is no evidence to even suggest that Miller was deliberately indifferent so as to create a substantial risk of serious harm to Plaintiff. The subjective prong requires that Plaintiff prove "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed." *Adamson v. Miller*, 808 F. App'x 14, 18 (2d Cir. 2020) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017)). According to the record, during their sole interaction, Miller "performed a body search and found no injury to be visible at any site and further found no ecchymosis, no redness and no swelling." (Miller Decl. ¶ 8; *see also* Miller Decl. Ex. A; Miller Decl. Ex. B at 3). Based on his findings, Miller "determined that no additional medical treatment was necessary at that time and . . . recommended that . . . [Plaintiff] could follow up with his primary medical provider if [Plaintiff] felt that was necessary." (Miller Decl. ¶ 12). Nothing in the record suggests that Miller was aware of—let alone disregarded—a serious medical need. *See,*

*e.g.*, *Abreu v. Farley*, No. 11-CV-06251, 2019 WL 1230778, at *12 (W.D.N.Y. Mar. 15, 2019) (granting summary judgment on Eighth Amendment deliberate indifference claim where "medical progress notes wholly undermine[d] Plaintiff's contention that he suffered a sufficiently serious" injury that was disregarded); *Mena v. City of New York*, No. 13-CV-02792, 2018 WL 4328827, at *7 (E.D.N.Y. Sept. 11, 2018) (granting summary judgment where x-ray "show[ed] no remarkable results" (internal quotation marks omitted)); *see also Riley v. Roycroft*, No. 16-CV-02227, 2017 WL 782917, at *7 (S.D.N.Y. Feb. 28, 2017) (dismissing Eighth Amendment deliberate indifference claim where medical notes reflected subjective conclusion that, despite plaintiff's requests, a brace was unnecessary).

In light of the evidence produced and Plaintiff's inability to raise a genuine issue of material fact with respect to the issues outlined above, Miller's motion for summary judgment is granted and the claim for relief against him is dismissed with prejudice.

III.   Fourteenth Amendment Procedural Due Process Claim Against O'Neill

The remaining claim is one against O'Neill for violating Plaintiff's right to procedural due process under the Fourteenth Amendment. The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV § 1. Establishing a procedural due process claim in a prison context requires that a plaintiff show "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Joseph v. Cuomo*, No. 20-CV-03957, 2021 WL 200984, at *6 (E.D.N.Y. Jan. 20, 2021)); *see also Jackson v. Annucci*, No. 20-CV-02008, 2021 WL 2581340, at *9 (S.D.N.Y. June 23, 2021).

As to the first element, "the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 510 (S.D.N.Y. 2012) (quoting *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001)). An inmate's liberty interest is implicated by prison disciplinary proceedings only if the discipline "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Washington v. Afify*, 681 F. App'x 43, 45 (2d Cir. 2017). "Such discipline must be unusually onerous." *Aikens v. Porter*, No. 16-CV-00949, 2019 WL 499993, at *4 (W.D.N.Y. Feb. 8, 2019) (citing *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999)). "Factors relevant to this determination include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" *Colon v. Annucci*, 344 F. Supp. 3d 612, 632 (S.D.N.Y. 2018) (quoting *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004)). "[T]here can be no 'violation' of procedural due process requirements unless the confinement meets the atypicality standard of *Sandin*." *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999).

Here, while the claim for relief has two elements, the parties have not taken a position regarding how the Court should calculate Plaintiff's days in the SHU for purposes of the first step of the analysis. (*See generally* Def. Br.; Doc. 93; Doc. 93-1). Generally, if the Court applied the penalty imposed by O'Neill—365 days in the SHU—that punishment would be, *ipso facto*, "a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin*." *Palmer*, 364 F.3d at 65 (internal quotation marks omitted). If, however, the Court applied the penalty as reduced by Venettozzi—that is, roughly 183 days—the sentence would be considered "intermediate." *See Rivera v. Royce*, No. 19-CV-10425, 2021 WL 2413396,

at *10 (S.D.N.Y. June 11, 2021). For an "intermediate" sentence to qualify under the first prong of the analysis, Plaintiff would also have to present facts showing that the placement "imposed atypical and significant hardships." *Id.* (internal quotation marks omitted). Given the fact that the moving brief concerns itself solely with the sufficiency of process (*see* Def. Br. at 19-24), the Court assumes, without deciding which calculation applies, that Plaintiff has established the elements of the first prong of this claim for relief.

Turning to the second prong, the Second Circuit instructs that:

> [i]n a prison disciplinary hearing, due process rights provide that at a minimum, a prisoner is entitled to be confronted with the accusation, informed of the evidence against him and afforded a reasonable opportunity to explain his actions. More specifically, an inmate must receive advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken.

*Williams v. Korines*, 966 F.3d 133, 143 (2d Cir. 2020) (internal citations and quotation marks omitted). Here again, the evidence supports granting the relief sought.

In short, Plaintiff received all the process to which he was due: (1) Plaintiff received advanced notice of the charges against him (Def. 56.1 Stmt. ¶ 28; Gashi Decl. Ex. B at 67; Gashi Decl. Ex. C at 3); (2) Plaintiff questioned all nine witnesses (five inmates and four DOCCS employees) who testified at the hearing (Def. 56.1 Stmt. ¶¶ 39-40; *see generally* Gashi Decl. Ex. C); (3) Plaintiff received all documents he requested, except for the Unusual Incident Report—of which he received the portion pertaining specifically to him (Def. 56.1 Stmt. ¶¶ 33-34; *see also* Gashi Decl. Ex. B at 70-71; Gashi Decl. Ex. C at 40-41); (4) Plaintiff testified on his own behalf (Def. 56.1 Stmt. ¶ 38; *see also* Gashi Decl. Ex. B at 73; Gashi Decl. Ex. C); (5) Plaintiff objected on the record during the hearing (Def. 56.1 Stmt. ¶ 41; *see also* Gashi Decl. Ex. B at 73, 77; Gashi

18

Decl. Ex. C); and (6) O'Neill rendered a decision both on the record and in a written form, based on evidence presented to him (Def. 56.1 Stmt. ¶ 42; *see generally* Gashi Decl. Ex. C; Gashi Decl. Ex. D). Plaintiff suggests that O'Neill was biased against him (Compl. at 29), but generalized allegations about a hearing officer's predisposition against an inmate cannot withstand a motion for summary judgment. *See Brooks v. Pratt*, 77 F. Supp. 3d 301, 316-17 (W.D.N.Y. 2014). Moreover, Plaintiff was provided with an assistant of his choosing to help him prepare for the hearing and O'Neill adjourned the proceeding several times to permit development of the record. (*See* Def. 56.1 Stmt. ¶¶ 29-31, 37; *see also* Gashi Decl. Ex. B at 68, 72-73; Gashi Decl. Ex. C at 3, 8-9, 20-21, 42, 70, 82-83). Nothing about this record suggests that O'Neill was biased. Plaintiff argued also that his "retaliation" claim, based on a theory that the "disciplinary actions taken against him . . . were based upon false charges," would survive the extant motion. (Doc. 93-1 at 2). It is unclear to what Plaintiff refers but, in any event, "the filing of false disciplinary reports is not a constitutional violation, as long as the plaintiff was provided with all the due process rights to which he was entitled." (Doc. 68 at 18).

In short, Plaintiff received all the process to which he was entitled and he has failed to raise a genuine issue of material fact. O'Neill's motion for summary judgment is, therefore, granted, and the claim for relief against him is dismissed with prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, the motion for summary judgment is GRANTED and the claims for relief against Valentin, Miller, and O'Neill are dismissed with prejudice.

The Court shall hold a telephonic conference on October 26, 2021 at 12:00 p.m. to discuss next steps and preparation for trial regarding the remaining claims against Maldonado and Flack.

At the time of the conference, all parties shall call: (888) 398-2342; access code: 3456831. Defense counsel is reminded that it is their responsibility to ensure Plaintiff's appearance on that date.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 87, terminate Valentin, Miller, and O'Neill as parties to this action, and mail a copy of this Memorandum Opinion and Order to Plaintiff.

SO ORDERED:

Dated:   White Plains, New York
         August 16, 2021

_____
PHILIP M. HALPERN
United States District Judge